# YetterColeman LLP

ACCEPTED
15-24-00061-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
6/2/2025 10:39 AM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
6/2/2025 10:39:25 AM
CHRISTOPHER A. PRINE
Clerk

June 2, 2025

***Via ECF***

Christopher A. Prine, Clerk
Fifteenth Court of Appeals
William P. Clements Building
300 W. 15th Street, Suite 607
Austin, Texas 78701

Re:  Nos. 15-24-00061-CV, 15-24-00120-CV; *State of Texas v. Harris County, Texas, et al.*, in the Fifteenth Court of Appeals, Austin, Texas

Dear Mr. Prine:

This letter relates to a recent Supreme Court decision that might inform this Court's decisions in the two separate appeals listed above. *Paxton v. Annunciation House, Inc.*, 2025 WL 1536224 (Tex. May 30, 2025). Please forward it to Chief Justice Brister, Justice Field, and Justice Farris.

**Contemporaneous legislation confirms original understanding.** These two appeals concern Harris County's Uplift Harris program and Community Prosperity Program. Each program, temporarily enjoined, seeks to deploy federal funds to support the County's poor residents. Harris County argues that the 1876 Constitution was not originally understood to prohibit such poor relief.

*Annunciation House* supports this argument. There, the Supreme Court reviewed English, early American, and Texan quo warranto practices. *Id.* at *3-5. It then concluded that a statute—largely copying the constitutional text and enacted six months after ratification—"confirms" how the 1876 Constitution was "originally understood." *Id.* at *6. The Court explained: "Legislative construction and contemporaneous exposition of a constitutional provision is of substantial value in constitutional interpretation." *Id.* (quoting *Am. Indem. Co. v. City of Austin*, 246 S.W. 1019, 1023 (Tex. 1922)). "Importantly," the Court noted, "the statute also tracked the Anglo-American quo warranto practice" prior to ratification. *Id.* Thus, the Legislature "provided important context" on the meaning of the Constitution via a statute enacted shortly after ratification. *Id.* at *7.

That same line of argument applies with respect to the original understanding of the constitutionality of poor relief. English, early American, and Texan practices prior to 1876 show that relief to the poor was understood as a government function serving a public purpose, not as a private gift. *See* Appellees' Br. 39-47, No. 15-24-00120-CV; Appellees' Br. 46-52, No. 15-24-00061-CV.

At the same time the 1876 Constitution prohibited the Legislature from permitting any county "to grant public money or thing of value, in aid of any individual," it expressly contemplated that "paupers" would permissibly be "supported by" counties. Tex. Const. art. III, § 52; Tex. Const. of 1876 art. VI, § 1 (repealed Nov. 4, 1997) (disenfranchising "All paupers supported by any county"); *see id.* art. XI, § 2; *id.* art. XVI, § 8. Then, five months after ratification, the Legislature enacted a statute copying the same terms as the constitutional text; it empowered and *required* counties "To provide for the support of paupers[.]"[1]

That term "support," as used in the Constitution and statute, "means more than supplying them with food and clothing and a house to stay in. It means all that is necessary to bodily health and comfort." *Monghon v. Van Zandt County*, 1886 WL 4550, at *1 (Tex. Ct. App. 1886, no writ). And counties' commissioners courts were openly providing cash assistance to poor residents as "support" in the years immediately following the ratification. *See* Appellees' Br. 48, No. 15-24-00120-CV.

Thus, just as in *Annunciation House*, these contemporaneous legislative constructions and expositions—the statute and counties' cash assistance—tracked the constitutional text and centuries of Anglo-American and Texan practices. They confirm the original understanding of the 1876 Constitution: "support" for the poor was a public duty and permissible governmental function, not a prohibited private "grant" to individuals. *See Annunciation House*, 2025 WL 1536224, at *6.

**The Attorney General lacked authority to represent the State in the district court.** *Annunciation House* also reinforces the Attorney General's lack of authority to represent the State in the district court. *See* Appellees' Br. 16-30, No. 15-24-00120-CV. "Asked to decide a constitutional provision's scope, [courts] begin with its text." *Annunciation House*, 2025 WL 1536224, at *9.

---

[1] Act approved July 22, 1876, 15th Leg., R.S., ch. 55, § 4, 1876 Tex. Gen. Laws 51, 52, *reprinted in* 8 H.P.N. Gammel, *The Laws of Texas 1822-1897*, at 887, 888 (Austin, Gammel Book Co. 1898).

Whatever the Attorney General's authority—common-law[2] or otherwise—to represent the State in district courts before the 1876 Constitution, the plain text of that Constitution generally deprived him of that power:

> The Attorney General shall represent the State in all suits and pleas *in the Supreme Court* of the State in which the State may be a party . . . .
>
> The County Attorneys shall represent the State in *all cases in the District and inferior courts* in their respective counties; but if any county shall be included in a district in which there shall be a District Attorney, the respective duties of District Attorneys and County Attorneys shall in such counties be regulated by the Legislature.

Tex. Const. art. IV, § 22; Tex. Const. art. V, § 21 (emphasis added). Outside of inapplicable, narrow exceptions expressed in constitutional and statutory text, this clear language excludes the Attorney General from representing the State in the district courts: the county attorneys have the exclusive authority in "all cases."

*Annunciation House* relied on multiple Supreme Court opinions confirming that this plain text means the county attorneys' authority in the district courts is exclusive. It cited the page in *Maud v. Terrell* that includes this point:

> [The Constitution,] by Section 21 of Article 5, *lodges with the county attorneys the duty of representing the State in all cases in the district and inferior courts . . .* ; and *by Section 22 of Article 4 that duty as to suits and pleas in the Supreme Court is confided to the Attorney-General*. With the limitation existing in the authority of the Legislature, under Section 22 of Article 4, to create additional causes of action in favor of the State and intrust their prosecution . . . solely to the Attorney-General, *the powers thus conferred by the Constitution upon these officials are exclusive.*

---

[2] *Annunciation House* began by discussing "eight centuries" of quo warranto practice and cases showing that attorney generals' authority to bring suit to revoke corporate charters was declared as "the common law of the land" in the United States. 2025 WL 1536224, at *3-7 (quoting *Terrett v. Taylor*, 13 U.S. (9 Cranch) 43, 51 (1815)). That rich history contrasts significantly with this case, where the Attorney General has not provided cases showing that, in 1840, the "English common law as declared by the courts of the different states of the United States" included attorneys general's authority to sue local governments in *ultra vires* suits on behalf of the State. *See Grigsby v. Reib*, 153 S.W. 1124, 1125 (Tex. 1913) (construing statute adopting common-law).

*Maud v. Terrell*, 200 S.W. 375, 376 (Tex. 1918) (emphasis added); *see Annunciation House*, 2025 WL 1536224 at *11 (citing *Maud*, 200 S.W. at 376-77). So, *Maud* held that, with limited exceptions, the Constitution's conferring power upon the county attorneys to represent the State in the district court was exclusive.

*Annunciation House* itself discussed this same exclusivity principle:

[In] *International & Great Northern Railroad Co. . . .* we held that Article IV, § 22 was sufficiently protective of the attorney general's quo warranto authority *as to make it exclusive.* Thus, even if district or county attorneys may invoke quo warranto for some purposes, the legislature may not authorize them (or anyone other than the attorney general) to do so for investigating corporate malfeasance.

*Annunciation House*, 2025 WL 1536224, at *11 (citing *State v. Int'l & Great N. Ry.*, 35 S.W. 1067, 1068-69 (Tex. 1896)) (emphasis added); *see id.* (not reaffirming or contextualizing prior decision).

At the pages cited of *International & Great Northern Railroad*, the Supreme Court had reaffirmed the exclusivity point, originally made in *State v. Moore*:

"*It must be presumed that the constitution, in selecting the depositaries of a given power*, unless it be otherwise expressed, *intended that the depositary should exercise an exclusive power, with which the legislature could not interfere by appointing some other officer to the exercise of the power*." We are of the opinion that the conferring upon the attorney general of the specific authority . . . evidences an intent to make such authority exclusive in such officer . . . .

*Int'l & Great N.*, 35 S.W. at 1068 (quoting *State v. Moore*, 57 Tex. 307, 314 (1882) (by Justice Stayton, a participant in the 1875 convention)) (emphasis added).

Thus, outside of narrow constitutional and statutory carveouts, the Constitution's conferring upon the county attorneys the power to represent the State in the district court in "all cases" excludes the Attorney General from exercising that same power. *Annunciation House* and the exact pages of the cases it cites support this proposition.

Harris County respectfully asks that the Court affirm.

Sincerely,

Grant B. Martinez
*Counsel for Appellees*

cc:     ***Via ECF***
        Benjamin Wallace Mendelson
        Assistant Solicitor General
        Ben.Mendelson@oag.texas.gov
        Office of the Attorney General
        *Counsel for Appellant*

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Grant Martinez on behalf of Grant Martinez
Bar No. 24104118
gmartinez@yettercoleman.com
Envelope ID: 101487757
Filing Code Description: Letter
Filing Description: Letter to Court re Annunciation House
Status as of 6/2/2025 10:46 AM CST

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ben Mendelson | | Ben.Mendelson@oag.texas.gov | 6/2/2025 10:39:25 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Delonda Dean | | ddean@yettercoleman.com | 6/2/2025 10:39:25 AM | SENT |
| Grant Martinez | 24104118 | gmartinez@yettercoleman.com | 6/2/2025 10:39:25 AM | SENT |
| Athena Leyton | | athena.leyton@oag.texas.gov | 6/2/2025 10:39:25 AM | SENT |
| Lily Hann | 24133836 | Lhann@yettercoleman.com | 6/2/2025 10:39:25 AM | SENT |
| Toni Shah | | toni.shah@oag.texas.gov | 6/2/2025 10:39:25 AM | SENT |
| Yetter Coleman | | efile@yettercoleman.com | 6/2/2025 10:39:25 AM | SENT |
| Ryan Cooper | | ryan.cooper@harriscountytx.gov | 6/2/2025 10:39:25 AM | SENT |
| William Farrell | | biff.farrell@oag.texas.gov | 6/2/2025 10:39:25 AM | SENT |
| Andrea Mintzer | | Andrea.Mintzer@harriscountytx.gov | 6/2/2025 10:39:25 AM | SENT |
| Eleanor Matheson | | Eleanor.matheson@harriscountytx.gov | 6/2/2025 10:39:25 AM | SENT |
| Nicole Myette | | nicole.myette@oag.texas.gov | 6/2/2025 10:39:25 AM | SENT |
| Jonathan Fombonne | | jonathan.fombonne@harriscountytx.gov | 6/2/2025 10:39:25 AM | SENT |
| Grant Martinez | | gmartinez@yettercoleman.com | 6/2/2025 10:39:25 AM | SENT |
| Edward Swidriski | | Edward.Swidriski@harriscountytx.go | 6/2/2025 10:39:25 AM | SENT |

Associated Case Party: Harris County, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Grant Martinez on behalf of Grant Martinez
Bar No. 24104118
gmartinez@yettercoleman.com
Envelope ID: 101487757
Filing Code Description: Letter
Filing Description: Letter to Court re Annunciation House
Status as of 6/2/2025 10:46 AM CST

Associated Case Party: Harris County, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Grant Martinez | 24104118 | gmartinez@yettercoleman.com | 6/2/2025 10:39:25 AM | SENT |
| Lily Hann | 24133836 | Lhann@yettercoleman.com | 6/2/2025 10:39:25 AM | SENT |